UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
            Plaintiff,                )
                                      )
v.                                    )
                                      )
E-MONEE.COM, INC., ESTUARDO BENAVIDES, )
and ROBERT B. COOK,                   )
                                      )
            Defendants.               )
_____)

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### I.   INTRODUCTION

1. From approximately January 2010 through at least May 2011, Defendants E-Monee.Com, Inc., its president, Estuardo Benavides, and one of its directors, Robert B. Cook, engaged in the fraudulent offer of E-Monee securities. Benavides and Cook, on behalf of E-Monee, engaged in a scheme to defraud potential investors by soliciting them to buy shares in E-Monee under false pretenses that the company owned Mexican bonds purportedly worth approximately $5 billion that the Central Bank of Mexico had validated. They also misrepresented that E-Monee's shares would substantially increase in value. In reality, the Mexican bonds the company owned were essentially worthless and there was no valid basis for the claims by Benavides and Cook that E-Monee's shares would substantially increase in value.

2. For example, in April and May 2011 Benavides and Cook, on behalf of E-Monee, had meetings with a person they thought was an investor, who in fact was a Secret Service agent carrying out a sting operation. At the meetings, they claimed the company owned valuable

Mexican bonds and gave the agent other false information to solicit him to purchase $8 million worth of stock in E-Monee.

3.  As a result of the conduct described in this Complaint, the Defendants violated Section 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a). Unless restrained and enjoined, they are reasonably likely to continue to violate the securities laws. The Commission respectfully requests that the Court enter: (1) a permanent injunction restraining and enjoining the Defendants from violating the federal securities laws; (2) an order directing the Defendants to pay civil money penalties; and (3) an order barring Benavides and Cook from participating in any offering of penny stock.

## II.  DEFENDANTS

4.  **Benavides**, age 59, was the president and a director of E-Monee. Benavides resides in Margate, FL.

5.  **Cook**, age 70, was a director of E-Monee. He resides in Tequesta, FL. Cook is a licensed Florida attorney.

6.  **E-Monee** was a Nevada corporation with principal offices in Ft. Lauderdale, FL. During the relevant time period, E-Monee's common stock was quoted on the OTC Link operated by OTC Markets Group Inc. under the symbol "EMNC." E-Monee has never registered an offering of securities under the Securities Act or a class of securities under the Exchange Act. E-Monee has been an inactive corporation since approximately October 2008.

7.  E-Monee's stock is a "penny stock" as defined by the Exchange Act. At all times relevant to this Complaint, E-Monee's stock traded less than $1 per share. During the same time period, E-Monee's stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Securities Exchange Act of 1934. For

example, the company's stock: (1) did not trade on a national securities exchange; (2) was not an "NMS stock," as defined in 17 C.F.R. § 242.242.600(b)(47); (3) did not have net tangible assets (i.e., total assets less intangible assets and liabilities) in excess of $5,000,000; and (4) did not have average revenue of at least $6,000,000 for the last three years.

### III. JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a).

9. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because Benavides and Cook reside in the District and E-Monee's principal place of business is located in the District. Additionally, many of the Defendants' acts and transactions constituting violations of the Securities Act occurred in the District. For example, Benavides and Cook met with the undercover agent on two occasions regarding the scheme in the District.

10. The Defendants, directly or indirectly, made use of the means or instrumentalities of transportation or communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, in connection with the conduct alleged in this Complaint.

### IV. THE FRAUDULENT SCHEME

11. E-Monee purportedly engaged in the following lines of businesses: (1) electronic cashless payment services and solutions; (2) the construction of a theme park in Colombia similar to Disney World through a partnership; and (3) a natural resources extraction business deriving revenue from an oil contract with the Venezuelan government. In reality, E-Monee had little to no revenues and real assets.

12. On multiple occasions from approximately January 2010 through at least May 2011, Benavides and Cook solicited potential E-Monee investors either in person or through telephone conversations. During these sales solicitations, Benavides and Cook told potential investors the company purportedly owned valuable Mexican bonds and they should purchase E-Monee shares (which included both newly-issued shares and shares Benavides owned) because the stock would soon be trading at around $5.00 a share. In addition, they claimed the Central Bank of Mexico had validated the bonds.

13. Benavides and Cook had a file of misleading documents they showed to potential investors, including originals or copies of Mexican bonds and a stock purchase agreement. They also showed potential investors false documents purportedly confirming the value of these bonds, including a letter from the Central Bank of Mexico, a screenshot from Euroclear Bank, and attestation letters on Cook's letterhead.

A. **Solicitation of an Undercover Agent – First Meeting**

14. The Secret Service learned about Benavides and Cook's attempts to obtain investors for E-Monee by touting the supposedly valuable Mexican bonds as company assets. Unbeknownst to Benavides and Cook, on April 20, 2011, they met with an undercover Secret Service agent, whom they believed to be a wealthy potential investor named "Luke," at a Fort Lauderdale restaurant. During this meeting, as further described below, they made a number of false statements while soliciting him to purchase shares in E-Monee.

15. Benavides and Cook told Luke about E-Monee's different lines of business, and claimed the company had been engaging in them for many years. Benavides called E-Monee a "money making machine" and "extremely successful." Benavides also told Luke E-Monee owned a number of Mexican bonds that had an aggregate value of over $5 billion. Specifically,

he claimed the company owned a $2.5 billion Mexican bond, two $670 million bonds, and twenty $67 million bonds.

16. Benavides claimed to Luke that E-Monee's goal was to get a line of credit using the bonds as collateral or turn the bonds into liquid assets. He said the company would achieve this by getting the Central Bank of Mexico to validate the bonds and place them on deposit at Euroclear Bank. Benavides told Luke all of the Mexican bonds E-Monee owned were secured by gold in the United States. Cook chimed in and told Luke an individual in Texas indicated he was willing to pay more than $670 million for one of the bonds.

17. Benavides showed Luke documents that purportedly certified the value of the $2.5 billion Mexican bond and the twenty $67 million bonds. He also presented to Luke a doctored Euroclear screenshot as evidence that one of E-Monee's bonds was already on deposit at Euroclear. Furthermore, he showed Luke a fake letter written in Spanish purportedly from the Central Bank of Mexico confirming it would validate the bonds so they could be processed through Euroclear.

18. Benavides told Luke he owned 50.7% of E-Monee's stock, and could sell half of his holdings (eight million shares) to him for $8 million. Cook stated the shares were free trading and did not have a holding period.

19. When Luke asked why E-Monee needed his investment, Benavides explained the company had spent a lot of money positioning itself to own the bonds, and that it would take money to get the bonds on Euroclear. He also said the company now needed to "position the stock on the exchanges."

20. Both Benavides and Cook explained to Luke that E-Monee needed capital to hire lawyers to file a registration statement with the Securities and Exchange Commission. They said

that once this happened, E-Monee's stock would trade at around 50 cents a share. They said the company would then announce a 10 to 1 reverse split, further increasing the value of the stock. At that point, they claimed E-Monee would then be positioned to move to the NASDAQ.

21.     Based on all this, Cook told Luke that if he invested $1.00 per share in E-Monee now, his investment could easily be worth $5 a share by year's end, and top out at around $10 a share. Given that the Mexican bonds owned by the company were essentially worthless and E-Monee had little to no revenues or real assets, the representations made by Benavides and Cook about E-Monee's share price rising to $5 to $10 a share were baseless. In addition, Benavides and Cook had no reasonable basis for their projections that E-Monee's share price would be worth $5 to $10 a share.

22.     To further entice Luke to invest, Benavides falsely claimed a prominent U.S. Congressman was an investor in E-Monee.

### B.     Solicitation of an Undercover Agent -- Second Meeting

23.     Benavides and Cook attempted to close the deal with Luke by making a number of false statements during a second meeting held on May 2, 2011 at a Fort Lauderdale hotel.

24.     At this meeting, Benavides reiterated E-Monee's plans to increase its stock price. Benavides told Luke that the "10 to 1" reverse split would be happening within a few days, and claimed that once the split was announced "on the wire" E-Monee's shares would hit the $1 mark within a few weeks. Benavides also said brokers would then begin marketing the stock. He claimed that at that point "nobody loses." Benavides assured Luke that in less than four weeks, he could sell his stock for $2.00 to $3.00 a share.

25. Finally, Benavides added he supposedly had received an email from a relative of the prominent U.S. Congressman stating that the Congressman "wants to be on the board [of E-Monee] because he can contribute."

26. Cook provided Luke with a purchase agreement for the eight million shares along with the wire instructions for him to transfer the funds to Cook's trust account. Benavides and Luke then both signed the purchase agreement. The stock purchase agreement indicated that out of the $8 million Luke was to invest, Cook was to receive $800,000.

## COUNT I

### Fraud In Violation of Section 17(a)(1) of the Securities Act

27. The Commission realleges and incorporates paragraphs 1 through 26 of its Complaint.

28. From approximately January 2010 through at least early May 2011, the Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

29. By reason of the foregoing, the Defendants, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(l) of the Securities Act, 15 U.S.C. §77q(a).

## COUNT II

### Fraud in Violation of Section 17(a)(3) of the Securities Act

30. The Commission realleges and incorporates paragraphs 1 through 26 of its Complaint.

31. From approximately January 2010 through early May 2011, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, have engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

32. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## **RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that the Court:

### I.

### **Declaratory Relief**

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### **Permanent Injunctive Relief**

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act, as indicated above.

### III.

### **Penalties**

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section

20(d) of the Securities Act, 15 U.S.C. § 77t(d).

## IV.

### Penny Stock Bar

Issue an Order barring Benavides and Cook from participating in any offering of penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), for the violations alleged in this Complaint.

## V.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VI.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

March 19, 2013

By: /s/ Christopher E. Martin
Christopher E. Martin
Senior Trial Counsel
SD Fla. Bar # A5500747
Telephone: (305) 982-6386
Facsimile: (305) 536-4154
E-mail: martinc@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISISON**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131

Telephone: (305) 982-6300
Facsimile: (305) 536-4154